THE HYDEVILLE COMPANY *v.* THE EAGLE RAILROAD AND SLATE COMPANY.

*Lease. Construction. Sealed Instrument. Parol Agreement. Assumpsit. Covenant. Debt.*

It is the duty of the court, if possible, to so construe an agreement as to give effect to every part of it and form from the parts an harmonious whole.

The plaintiff leased to the defendant certain premises by written lease, under seal, and therein agreed to make certain repairs upon the premises within one week from the date thereof. *Held* that the defendant was not bound to take possession of the premi-

ses and pay rent, unless the plaintiff made the stipulated repairs within a week from the execution of the lease; and the defendant could maintain an action against the plaintiff, after the expiration of a week, for his failure to make the repairs.

About six months after the lease was executed, the plaintiff having failed to make the stipulated repairs, the defendant, before he went into possession of the premises in acceptance of a proposition made by the plaintiff, endorsed upon the lease the following agreement, and signed the same:

" This may certify that in consideration of a discount from the written lease of $50, I agree to put the said houses in repair, and deliver them at the expiration of this lease in like good repair, and pay to the Hydeville Company $200, instead of the provisions of said lease."

*Held* that this was an agreement to pay $200 for the remainder of the time the lease had to run, and not merely to discount $50 from the rent reserved in the lease.

The plaintiff cannot maintain an action of debt or covenant for the rent reserved in the lease, nor for any breach of the covenants thereof, for the reason that he has not performed the conditions precedent to his right of recovery. The only remedy he has is, upon the agreement endorsed upon the lease, which is not under seal, and for a breach of which assumpsit will lie.

By this endorsement on the lease, the whole agreement under which the defendant occupied the premises was reduced to an agreement not under seal, and the lease became a part thereof, and the plaintiff is entitled to recover in assumpsit for damages done to the premises in violation of the terms of the lease.

THIS is an action of assumpsit upon several special counts. Plea, the general issue, and trial by the court, at the March term, 1871, WHEELER, J., presiding.

Upon the trial it appeared that on the first day of October, 1866, the plaintiffs owned tenement houses with land adjoining for gardens, in Poultney, then out of repair and encumbered with rubbish. That on that day they leased these houses and gardens to the defendants to be occupied by their laborers, by an indenture of that date in two parts, executed by the parties, and one part by each party to the other. The indenture contains the agreement of the parties then made in respect to the letting, and is marked A.

The plaintiffs repaired the doors and windows of the houses to some extent, and scraped out the rubbish, within a week after the date of the indenture, but not sufficient to fulfill their agreement upon that subject contained in the indenture. The plaintiffs claimed that they had complied with the agreement, and the defendants that they had not. The plaintiffs left the premises for the defendants to occupy, but the defendants did not go into the occupation of them because they were not in repair. In March, 1867, the parties had negotiations with reference to their differences concerning the premises, and the plaintiffs submitted to the

defendants the proposal in writing, marked B. The defendants accepted that proposal, and on the 20th day of March, 1867, paid the plaintiffs two hundred dollars in pursuance of the proposal and acceptance, and took from the plaintiffs the receipt therefor, marked C. An endorsement was then made upon the back of each part of the indenture, according to the proposal of the plaintiffs, as appears upon the back of the one marked A. At the time this payment and endorsement were made, the plaintiffs claimed that the effect of the transaction was to take fifty dollars from the rent for the term mentioned in the lease, and insisted that they should collect the rent according to the terms of the lease during the whole term, deducting the fifty dollars for repairs and the two hundred dollars paid. The defendants claimed that the effect of the transaction was to reduce the rent for the whole term to two hundred dollars, and insisted that they were not liable to and should not pay any more than that. The defendants then put the houses in repair and went into occupation of them. The parties supposed that the lease would terminate April 1, 1868; in fact by its terms it would terminate May 1, 1868. In January, 1868, the parties had some negotiations concerning the occupation of the premises by the defendants after the expiration of the lease, but what the negotiations were did not clearly appear. January 13, 1868, John Sutcliffe, the agent of the defendants in charge of this business, wrote to a Mr. Gandy, book-keeper of the defendants, the letter marked D. Mr. Gandy delivered the letter to the Mr. Hyde referred to in it, who was an agent of the plaintiffs, and received it for them. The defendants occupied the premises until April 1, 1870, without any further bargain, and paid rent for them quarterly at the rate of $250 per year after April 1, 1868, and for the quarter ending April 1, 1870, took the receipt which is marked E, and is made a part of this case. The plaintiffs took no possession or occupancy of the premises until May 1, 1870. At that time they took possession of the premises. The defendants did not keep the premises in good repair during their occupancy, but suffered waste by the cutting of shade trees upon them, and suffered the doors and windows of the houses to be broken, and the floors of the houses to be cut to pieces. The

damage by reason of this waste and these injuries is found to be two hundred dollars.

The plaintiffs claimed to recover for the rent of the premises according to the terms of the lease as originally made, from October 1, 1866, to April 1, 1868, deducting $50 on account of repairs by defendants, and $200 paid by defendants, March 20, 1867, for the rent from April 1 to May 1, 1870, at the rate of $250 per year and for the damages to the premises. The defendants claimed that they were not liable at all to the plaintiffs upon the facts in this case, and that if liable at all, the plaintiffs were not entitled to recover for the liability in this action of assumpsit.

The court held *pro forma* that the defendants were liable according to the plaintiffs' claim, and that the plaintiffs could recover for the liability in this form of action, and rendered judgment for the plaintiffs for $125, balance of rent for nineteen months under the lease, with interest thereon from May 1, 1868; for $20.83 rent from April 1 to May 1, 1870, with interest from May 1, 1870, and for $200 damages with interest from May 1, 1870, in all $378.86. To this decision and judgment the defendants excepted.

## [LEASE.]

This Indenture, made the first day of October, in the year of our Lord one thousand eight hundred and sixty-six, Witnesseth, that the Hydeville Co., of Hydeville, Vt., doth hereby lease, demise, and let unto the Eagle Rail Road and Slate Co., by their agent, John Sutcliffe, three houses described as follows : Situate in the town of Poultney, and on the line of the highway leading from Hydeville to Poultney village, and on what is known as the Hooker or Preston farm. The Cider Mill House, so called, of four tenements, the Tank House, so called, of two or three tenements, and the Con Sammon House, so called, of one tenement, with the land adjoining, and which is used for gardens for said houses.

The Hydeville Co. agree to repair the doors and windows within one week from date, and also to scrape out the rubbish.

To hold for the term of nineteen months from the first day of October, 1866, yielding and paying therefor the rent of two hundred and fifty dollars per annum.

And the said lessee does promise to pay the said rent in quarterly payments of sixty-two 50-100 each on the first days of Jan-

uary, April, July and October, at the office of the Hydeville Co., and to quit and deliver up the premises to the lessors or their attorney, peaceably and quietly, at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are, or may be put into by the said lessors, and to pay the rent as above stated, and also the rent as above stated for such further time as the lessees may hold the same, and not make or suffer any waste thereof; or make or suffer to be made, any alteration therein, but with the approbation of the lessors thereto in writing having been first obtained; and that the lessors may enter to view and make improvements, and to expel the lessee if he shall fail to pay the rent as aforesaid, or make or suffer any strip or waste thereof.

This was duly signed and sealed.

B.

"This may certify that in consideration of a discount from the within lease of fifty dollars, I agree to put the said houses in good repair, and deliver them at the expiration of this lease in like good repair, and to pay to The Hydeville Company two hundred dollars, instead of the provisions of the said lease."

We propose, in order to save any further trouble about the lease, to endorse thereon the above article, provided the Eagle Co. sign the said article, and pay the amount stated, on or before the 20th of March, 1867, but this is of no effect unless complied with.

PITT W. HYDE, Ag't.

C.

$200. Rec'd, Hydeville, Vermont, March 20th, 1867, of John Sutcliffe, Supt. Eagle Slate Company, two hundred dollars, agreeably to an endorsement on a certain lease from The Hydeville Company to the Eagle Slate Co., bearing date Oct. 1, 1866.

THE HYDEVILLE CO.,
Pitt W. Hyde, Ag't.

D.

NEW YORK, Jan. 13, '68.

Friend Gandy,

Herewith please find papers enclosed. You may inform Mr. Hyde that we will take those houses for another year at $250 per year, payment to be made quarterly, as he agreed with me. I have not yet made arrangements for passage; will write you in a day or two.

Truly yours, JOHN SUTCLIFFE.

*H. G. Wood*, for the defendant.

The case finds that the premises in respect to which these claims are made, were leased by indenture under seal, and that it contained a condition or stipulation to be performed by the plaintiff before the defendant was bound to enter into possession. It was, in effect, in the nature of a condition precedent, or an undertaking on the part of the plaintiff to put the tenements in a tenantable condition.

The plaintiff failed to perform it, and for that reason the defendants refused to enter into possession. Under such circumstances there can be no recovery for the period they were thus deprived of the use and possession of the demised premises. *Morgan* v. *Carter*, 4 C. and P. 295 (19 C. L. 521); *Gilhoday* v. *Washington*, 4 Comstock, 217; 7 Barbour, 281; Taylor's Landlord and Tenant, p. 236, n. 3.

Exhibit "B" does not change the legal character of the lease. By indorsing it upon the lease, *as the parties agreed it should be*, it became incorporated *in* and a *part* of it, in no way affecting or qualifying the remedies of the parties under the indenture, as a *sealed* instrument. *McArthur* v. *Ladd*, 5 Ham. Ohio Rep. 518; Chitty on Con., 603, note; *Hawkins, Ex'r*, v. *Sherman*, 14 C. L. 388; *Graham* v. *Stevens*, 34 Vt., 166; *Howland* v. *Coffin*, 47 Barb., 653. The plaintiffs' remedy is in covenant. Chitty's Pl., pp. 91, 106, 107; *The East India Co.* v. *Lewis*, 14 C. L., 347; *Wilkinson* v. *Pottel*, 47 Barb., 230; 8 Abbott's Dig., 387, § 13; *Tempest* v. *Rawlins*, 13 East, 18; *Porter* v. *Bentley*, 12 East, 167.

*Edgerton & Nicholson*, for the plaintiff.

The material modifications of the provisions of the original lease changed the form of remedy from covenant to assumpsit. *Porter* v. *Stewart*, 2 Aik. 417, and cases cited; *Mill Dam Foundry* v. *Hovey*, 21 Pick., 428–9; 1 Ch. Pl., 104 and 105; notes (0.) (2.) (3.) 10 Am. Ed.; *Sherwin, et al.* v. *R. & B. R. R. Co.*, 24 Vt., 347.

The opinion of the court was delivered by

Ross, J. I. The plaintiff claims that the lease of October 1, 1866, took effect and carried rent from its date, and that the only

effect of the subsequent agreement of March 20, 1867, was to discount $50 from the rent reserved in the lease. Such construction would render the last part of that agreement entirely nugatory. That clause which provides that two hundred dollars shall be paid the plaintiff "instead of the provisions of said lease," might as well have been unwritten. If this is not the construction to be given to the last part of the agreement, the plaintiff claims that it should be construed as a substitution of two hundred dollars for the rent named in the lease, and that the rent should commence from October 1, 1866. This construction would render the first part of that agreement repugnant and inharmonious. With this construction the discount from the lease would be $79.16, instead of $50, as stipulated in the first part of the agreement. It is the duty of the court, if possible, to construe the agreement so as to give effect to every part, and form, from the parts, a harmonious whole. If the circumstances under which the agreement was entered into be considered, there will be no difficulty in finding such a construction. By the original lease, the plaintiff was to put the tenements in repair within one week from its date. This was a condition precedent to the defendant's obligation to take possession and pay rent. The plaintiff made an attempt to make the repairs, but did not fully perform the condition precedent. The defendant, for that reason, refused to take possession, or to pay rent. Thus matters remained, till the agreement of March 20th was entered into. No obligation rested upon the defendant to pay rent for the time which had elapsed since the making of the-lease. The parties mutually understood that the lease would terminate April 1, 1868. This probably arose from a mistake in reckoning the time the lease was to run. Under these circumstances the plaintiff, in consideration the defendant would put the premises in good repair and surrender them in like good repair, agreed to discount fifty dollars from the lease, and the defendant agreed to pay $200, "instead of the provisions of said lease." At this time, as the parties mutually understood, the lease had only about one year to run. Construing the lease under the circumstances for the purposes of rent, as commencing at the time this subsequent agreement was made, and as continuing one year

from that time, or to April 1, 1867, (the ten additional days be. ing used for repairs,) we can give effect to every part of the agreement, and have all the parts harmonious. The discount is fifty dollars and no more, and the two hundred dollars which the defendant is to pay "instead of the provisions of the lease" is just the yearly rent reserved in the lease diminished by a discount of fifty dollars. This is the construction which we think should be placed upon the agreement of March 20, 1867. Under this construction the plaintiff is not entitled to recover for the $125 additional rent under the lease allowed by the county court. Neither can he recover for the month from April 1 to May 1, 1870, during which the defendant did not occupy the premises. The parties had, by mutual mistake in regard to the duration of the written lease, terminated it April 1, 1868, and the holding over, provided for, commenced from that date. This is evident from the bill for rent, presented by the plaintiff for the quarter ending March 31, 1870, as well as from the facts found by the court.

II. The defendant insists that the plaintiff has misconceived his remedy; that he should have declared on the lease, which is under seal, in debt for covenant broken, and not in assumpsit; that, at least, that part of the $200 allowed by the county court, which is for waste and which arises under a stipulation in the lease, cannot be recovered in assumpsit, and that, as the county court has failed to find what portion of the $200 is for waste, under the terms of the lease, and what part for failure to leave the premises in "like good repair," under the agreement of March 20, 1867, not under seal, no recovery can be had in this action for any part of that sum. This leads to a consideration of the effect of engrafting a written agreement, not under seal, upon a previous existing agreement, under seal. The lease became an existing contract, binding upon both parties, at the time of its execution and delivery, October 1, 1866. It is true the defendant was not bound to take possession of the premises and pay rent, unless the plaintiff made the stipulated repairs within a week from the execution of the lease. Neither could the plaintiff have maintained an action of debt on covenant for rent under the lease, till he had performed the condition precedent by making the repairs.

Yet the defendant could have maintained an action against the plaintiff, after the expiration of a week, for his failure to make repairs as provided in the lease. Hence the lease had been a subsisting contract between the parties nearly six months when the agreement of March 20, 1867, was entered into : so the doctrine claimed by the plaintiff, that the agreement of March 20th is to be taken as a part of the original lease and under seal, because made at the time the lease took effect, does not apply. It is entirely different, in this respect, from *Graham* v. *Stevens*, 34 Vt., 166.[*] There the writing upon the back of the deed, which showed the deed absolute upon its face was in fact a mortgage, was made at the same time the deed was made, and, as held by the court, became a part of the deed. Here the parties have engrafted a written agreement upon a subsisting sealed contract. From the decisions, *Porter et al.* v. *Stewart*, 2 Aik., 417, and *Sherwin et al.* v. *Rutland & Burlington R. R. Co.*, 24 Vt., 347, it is evident that the plaintiff cannot maintain an action of debt on covenant for the rent reserved in the lease, nor for any breach of the stipulations therein contained, to be performed by the defendant, inasmuch as he cannot show a fulfillment of the lease, on his part, in those particulars which were to be performed by him as conditions precedent to his right of recovery. The only remedy the plaintiff has, is upon the agreement of March 20, which is not under seal, and for a breach of which an action of assumpsit will lie. By this agreement the whole agreement, under which the defendant occupied the premises, was reduced to an agreement not under seal. The lease is referred to, for the terms of this agreement other than those contained in the writing of that date. It was as if the parties had written, we agree as is contained in the lease, which is referred to, with this present written agreement added thereto. Thereby the whole agreement, in character, was reduced to the character of the additional agreement then entered into. The whole agreement, thus made, was an unsealed agreement in writing, and contained the promises of the defendant not to commit waste, and to leave the premises in good repair, for the non-fulfillment of which the court has found the plaintiff entitled to recover $200 and interest from May 1, 1870. This is in

accordance with what is said in *Sherwin et al.* v. *R. & B. R. R. Co.*, above cited. It is there remarked, "It is now considered that if the party choose to sue upon the contract specially, he must declare in assumpsit, treating the enlargement as having incorporated the original contract into itself, and so all resting in parol," citing *Vicary* v. *Moore,* 2 Watts R., 251; Chitty on Contracts, 113; and notes.

The judgment of the county court is reversed, and judgment rendered for the plaintiff to recover $200 and interest from May 1, 1870.