## Herman S. and Mavis C. Thomas v. Thomas Farrell

[568 A.2d 409]

No. 88-118

Present: **Peck, Gibson, Dooley and Morse, JJ., and Barney, C.J. (Ret.),** Specially Assigned

Opinion Filed October 20, 1989

*Austin D. Hart* of *Dinse, Erdmann & Clapp,* Burlington, for Plaintiffs-Appellants.

*Norman Williams* and *Robert F. O'Neill* of *Gravel and Shea,* Burlington, for Defendant-Appellee.

**Dooley, J.** Plaintiffs Herman S. and Mavis C. Thomas appeal from the decision of the Chittenden Superior Court, which granted summary judgment in favor of defendant Thomas Farrell, declaring that a provision in plaintiffs' deed permitted defendant to diminish the number of parking spaces in the common parking area. We affirm.

Plaintiffs own a furniture store in a building that they purchased, along with the land directly underneath the building, from defendant under a warranty deed dated January 28, 1960. The land and building are in a shopping center along Shelburne Road in South Burlington. The building is free standing. The deed contained certain easements for parking: (1) exclusive use of a 25-foot-wide area east of plaintiffs' building and a similar area south of their building for customer parking; (2) use of an area north of their building, part of which defendant reserved the option to revoke in the event of further construction; and (3) shared use in common with other shopping center tenants of an area west of their building. The area west of the building lies between plaintiffs' store and Shelburne Road and to the north of the original access way for the shopping center. It was originally fully available for parking. This dispute centers on that area.

In 1970, the City of South Burlington initiated changes in the city traffic pattern and informed defendant of its intent to build

a curb divider on Shelburne Road which would prevent left turns into the common parking area along the access way south of plaintiffs' building. At that time, the access way did not align with anything on the other side of Shelburne Road. Defendant responded by moving the access way to the north to align with Home Avenue, a street on the opposite side of Shelburne Road. In order to accomplish this, the relocated access way cut diagonally across the parking area to the west of plaintiffs' store. Before moving the access way to align with Home Avenue, defendant secured the consent of all businesses in the shopping center, including the plaintiffs'. The change in location of the access way unavoidably affected the traffic flow pattern over the common parking area and necessitated a reduction in the number of parking spaces in the common lot in dispute from 66 to 47 or 48.

On November 12, 1984, plaintiffs filed their complaint in the Chittenden Superior Court, challenging the reduction in the available parking places that resulted from defendant's relocation of the access way. The record shows that plaintiffs initially acknowledged that the relocated access way was reasonable given traffic and safety requirements. However, they asserted in their complaint that defendant had deprived them of the benefit of the easement for parking, and they sought a declaratory judgment to that effect along with an order directing defendant to supply them "with adequate and convenient customer parking space" to make up for the loss.

Defendant filed a motion for summary judgment on September 21, 1987. Plaintiffs opposed defendant's motion but filed no motion of their own although they agreed that there was no dispute as to any material fact. The trial court granted summary judgment in favor of defendant, holding that the easement granted defendant the right to diminish the plaintiffs' right to share in the parking spaces in the common lot west of their building. Plaintiffs appeal claiming that summary judgment should be entered in their favor.

■ We start by noting that when we consider the correct disposition of a motion for summary judgment, we apply the same standard upon review as applied by a trial court. *Cav-*

*anaugh v. Abbott Laboratories*, 145 Vt. 516, 520, 496 A.2d 154, 157 (1985). That standard was recently stated as follows: "In order to succeed on a motion for summary judgment, the moving party must satisfy a stringent two-part test: first, no genuine issue of material fact must exist between the parties, and second, there must be a valid legal theory that entitles the moving party to judgment as a matter of law." *Price v. Leland*, 149 Vt. 518, 521, 546 A.2d 793, 796 (1988). See also Reporter's Notes to V.R.C.P. 56(c). The parties have agreed that the first prong of the test is met. Thus, we are presented solely with a legal issue—whether the undisputed facts entitle defendant to a judgment as a matter of law.

The legal issue centers on the proper construction of the easement contained in plaintiffs' deed. The pertinent language is as follows:

> 6. The Grantees shall have an easement, in common with others doing business in the vicinity, for customer parking in the area lying between the granted premises and Shelburne Street, . . . Grantor covenants and agrees that he will never construct any building on the said parking areas, or otherwise interfere with its use for parking except that a fifty (50) foot wide strip along the easterly sideline of Shelburne Street may be posted as a no parking zone to provide a right of way to the Cities Service Oil Company service station.

> The use of the foregoing easements for ingress, egress, access, parking, loading and unloading, shall be subject to such reasonable rules and regulations for the control of traffic as the Grantor, his heirs or assigns, may from time to time prescribe, and to such restrictions as have been or may hereafter be imposed by users of the areas. The Grantor may from time to time perform necessary maintenance work, make necessary improvements, provide illumination, clear the area of snow and debris, erect and remove signs and curbs, enlarge or diminish the rights of the Grantees and other persons to make use of the parking areas, and adopt and carry out such other practices as shall be beneficial for the purposes for which the easements are granted

or reasonably necessary for the enjoyment of the privileges by the Grantees and others. Provided, however, such reserved rights shall not be exercised so as to deprive the grantees of the benefit of the easement herein granted.

Plaintiffs' position is that: (1) the first sentence of the deed provision grants them the right to park in common with others; (2) the following sentence insures defendant will do nothing to interfere with the use of the parking areas except for the reservation of the 50-foot-wide strip; and (3) the final sentence of the provision insures that defendant shall not deprive plaintiffs of the benefit of the easement. Defendant relies on the second paragraph of the easement provision, specifically the first sentence which states that "the use of the easements shall be subject to such reasonable rules and regulations for the control of traffic as the [defendant] may . . . prescribe, and to such restrictions as [may be] imposed by users of the area." He also relies on the next sentence which states that the defendant may enlarge or *diminish* rights to the parking areas "for the enjoyment of the privileges by the [plaintiffs] and others."

■■ Our first responsibility in a deed construction case is to determine whether the deed is ambiguous. This is a question of law. See *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). In reaching this decision, we may look to the plain meaning of the language as well as the object, nature and subject matter of the writing and the circumstances surrounding its making. *Id.* at 578, 579, 556 A.2d at 83, 84.

We believe that this deed is clear and unambiguous with respect to the dispute before the Court. We first look to the plain meaning of the instrument itself, which we deem to declare the understanding and intent of the parties. See *Merritt v. Merritt*, 146 Vt. 246, 250, 500 A.2d 534, 537 (1985).

Under a plain reading of the deed, the first sentence clearly grants a customer parking easement to plaintiffs and others free from unreasonable interference. Equally clearly, that easement is subject to certain restrictions, which are contained in the second paragraph of the provision. The use of the easement is subject to reasonable rules and regulations for the control of

traffic in the common parking area. Defendant can make "necessary improvements" that "diminish" plaintiffs' right to use the parking area and can adopt practices "reasonably necessary for the enjoyment of the privileges" of the grantees of the parking easement. The restrictions were ample authority for defendant's action in rerouting the traffic diagonally across the common parking area west of plaintiffs' building to align the access way with Home Avenue. These changes were reasonable and necessary given the traffic and safety requirements. The diminution in the number of parking spaces was unavoidable.

The authority in the easement provision is particularly clear when one understands the nature of the easement in this case and the situation that gave rise to the rerouting of the access. Parking lots necessarily have roads and driveways that allow vehicles to reach their parking spaces. The easement in this case did not specify the location of such roads or driveways or guarantee a certain number of spaces for parking. It left the design of the parking area, including the forms of ingress and egress, to defendant, and he acted within that authority.

We must also recognize that defendant's actions were taken for the benefit of the shopping center businesses and patrons. The actions of the city threatened to limit access to the shopping center to the detriment of plaintiffs and other business owners. Defendant's actions were reasonably necessary to facilitate the use of the area in question by the businesses and their customers.

The parties have cited a number of cases from other states which involve analogous issues. The closest case is *State-Planters Bank of Commerce & Trusts v. Standard Cary Corp.*, 208 Va. 298, 156 S.E.2d 778 (1967), which involved the question of whether lease covenants that allowed the landlord to make certain changes within a parking lot authorized reducing the number of parking spaces available. The landlord in that case made changes in the parking lot to a shopping center to accommodate a new bank and drive-in banking facility. The tenant brought suit because the changes eliminated about ten parking spaces, arguing from provisions of the lease, which stated that the "parking area . . . shall remain a parking area in its entirety

throughout the terms of this lease and any extension and re-newals thereof" and that the landlord shall "not change the character of the [parking] area." *Id.* at 300–01, 156 S.E.2d at 781. The Virginia Supreme Court disagreed that the above lan-guage prevented the landlord's actions. The Court held that the shopping center landlord could reduce parking spaces by re-locating a curb cut and establishing a traffic lane pursuant to lease provisions that reserved to the landlord the right "to change entrances" and "rearrange said parking lot." *Id.* at 305–06, 156 S.E.2d at 785–86. The Court stated that the changes in the area were permissible under the lease because the entrance relocation was reasonable and the change diminished the num-ber of parking spaces by the least possible number. *Id.* at 305, 156 S.E.2d at 785. As in *State-Planters Bank*, we find that the governing language sufficiently reserved power in the shopping center owner to allow reasonable relocation of roads and curb cuts even at the expense of parking spaces.

*Affirmed.*