**INTERCARGO INSURANCE COMPANY f/k/a International Cargo & Surety Co., (Surety for M. Genauer), Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 95–1344.

United States Court of Appeals, Federal Circuit.

May 2, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined July 25, 1996.

Wayne James Jarvis, Hodes & Pilon, Chicago, Illinois, argued for plaintiff-appellee. With him on the brief were Michael G. Hodes and James L. Sawyer.

Joseph I. Liebman, Civil Division, Department of Justice, International Trade Field Office, New York City, argued for defendant-appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Amy M. Rubin, Civil Division, Department of Justice, International Trade Field Office. Of counsel was Sheryl A. French, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service.

Before RADER, Circuit Judge, COWEN, Senior Circuit Judge, and BRYSON, Circuit Judge.

Opinion for the court filed by Circuit Judge BRYSON. Dissenting opinion filed by Circuit Judge RADER.

BRYSON, Circuit Judge.

This dispute over import duties turns on whether the Customs Service obtained a valid extension of time within which to liquidate an importer's entries. The Court of International Trade held that Customs' extension notices were defective, and that the importer's surety was therefore entitled to judgment with respect to the disputed duties that Customs sought to impose. *Intercargo Ins. Co. v. United States*, 879 F.Supp. 1338 (C.I.T. 1995). We reverse and remand for further proceedings.

I

M. Genauer was the importer of a series of shipments of merchandise that entered this country at the Port of Seattle, Washington, between September and November of 1989. Appellee Intercargo Insurance Company served as Genauer's surety in connection with those imports. Upon the arrival of Genauer's merchandise, the Customs Service began its standard procedure for liquidating the entries, *i.e.*, determining the duty to be assessed on the imported items. As part of the liquidation process, Customs sought information relating to the entries.

Under 19 U.S.C. § 1504(a), Customs is required to complete its liquidation of entries within one year unless it extends that period as provided in 19 U.S.C. § 1504(b). The liquidation period cannot be extended for a total of more than four years from the date of entry (or other statutory triggering date). 19 U.S.C. § 1504(d). If Customs fails to complete the liquidation within the statutory period, including any extensions, the entries "shall be deemed liquidated at the rate of duty, value, quantity and amount of duties asserted at the time of entry." 19 U.S.C. § 1504(a).

In July of 1990, Customs had not completed its liquidation of the entries at issue in this appeal. Therefore, in order to avoid liquidation by operation of law under section 1504(a), Customs extended the liquidation period for one year pursuant to section 1504(b). At the time, section 1504(b) provided:

> The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer of record in such form and manner as the Secretary shall prescribe in regulations, if—
>
> > (1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;
> >
> > (2) liquidation is suspended as required by statute or court order; or
> >
> > (3) the importer of record requests such an extension and shows good cause therefore.

19 U.S.C. § 1504(b) (1988). The statute has subsequently been amended, but the amendment does not affect the outcome of this case.

Under section 1504(b), Customs can extend the liquidation period unilaterally, simply by giving notice in the form and manner pre-

scribed by regulation. The pertinent regulation provides that the district director of the Customs Service can extend the one-year period if "information needed by Customs for the proper appraisement or classification of the merchandise is not available." 19 C.F.R. § 159.12(a)(1). The regulation further provides that if the district director extends the time for liquidation, "he promptly shall notify [the importer and its surety], on Customs Form 4333–A, appropriately modified, that the time has been extended and the reasons for doing so." 19 C.F.R. § 159.12(b).

Invoking section 1504(b), Customs sought to extend the time by one year for liquidating each of the entries. As part of the extension process, Customs advised Intercargo that the liquidation period had been extended. The notice that Customs sent to Intercargo with respect to each entry read as follows:

THIS IS A COURTESY NOTICE. THE LIQUIDATION OF THIS ENTRY HAS BEEN EXTENDED; ADDITIONAL TIME IS REQUIRED BY CUSTOMS TO PROCESS THIS TRANSACTION. NO ACTION IS NECESSARY ON YOUR PART UNLESS INFORMATION IS SPECIFICALLY REQUESTED BY CUSTOMS.

A year later, in July of 1991, Customs liquidated the entries at a higher duty than that claimed by Genauer upon entry. Intercargo, as Genauer's surety, paid the liquidated duties for the entries and protested Customs' decision, but its protest was denied.

In December of 1992, Intercargo filed suit in the Court of International Trade challenging the assessed duties. Intercargo claimed that the liquidation extensions were invalid and that the entries therefore should be deemed liquidated by operation of law, which would result in a reduction of the duties to the rates claimed by the importer at the time of entry.

The Court of International Trade agreed that the one-year extensions for liquidating Genauer's entries were invalid. In the court's view, the extension notices were not effective to extend the statutory liquidation period unless they recited one of the three statutory reasons for obtaining additional time for the liquidations. The reason given in the extension notices at issue in this case—that "additional time is required by Customs to process this transaction"—was not one of the listed statutory reasons for an extension. Accordingly, the court held that the extension notices did not extend the time to complete the liquidations; the court therefore granted summary judgment to Intercargo on its challenge to the assessed duties.

## II

### A

Our analysis begins with this court's decision in St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763 (Fed.Cir.1993). The St. Paul court held that under section 1504 the Customs Service had one year within which to liquidate entries unless "properly noticed extensions" were granted "for statutory reasons." 6 F.3d at 770. The applicable regulation, according to the court, required "that Customs notif[y] the importer of the extension and articulate[ ] one of three statutory reasons for the extension." 6 F.3d at 767. If notice of an extension was given in the proper manner, the court held, the decision to extend the liquidation period would be upheld unless the importer or the surety "eliminated all reasonable bases for making that decision." Id. at 768.

Intercargo's argument in this case is based on St. Paul and is straightforward. The argument proceeds as follows: (1) St. Paul requires that Customs' extension notices articulate one of the three statutory reasons for the extensions; (2) the only applicable statutory ground for obtaining extensions in this case is that "information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer"; (3) the notices in this case did not articulate that statutory ground, but merely stated that Customs needed "additional time" to process the transaction; therefore (4) the extension notices were invalid; and (5) each entry was liquidated by operation of law one year after the date of entry of that merchandise, at the duty rate claimed by Genauer at the time of entry.

The government argues at length that the extension notices were legally sufficient to satisfy the requirement in the Customs regulation that Customs notify the importer and surety "that the time has been extended and the reasons for doing so." While it is true that the notices advised Intercargo that the time had been extended and gave a reason for the extensions, the reason given was not one of the statutorily authorized reasons. The statutory reason that Customs intended to invoke was that "information needed for the appraisement or classification of the merchandise is not available to the appropriate customs officer." 19 U.S.C. § 1504(b)(1) (1988). The notices, however, made no reference to the need for information. We thus agree with Intercargo that the reason given in the extension notices was not one of the reasons set forth in the statute, and that the notices therefore did not satisfy the requirement of the regulation as interpreted by the *St. Paul* court.

That conclusion, however, does not decide this case. There remains the question of what consequence should flow from the defect in the notices, to which we now turn.

### B

■ It is well settled that principles of harmless error apply to the review of agency proceedings. The harmless error rule is incorporated in the judicial review section of the Administrative Procedure Act, which governs the review of the Customs Service's decision in this case. Thus, Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, provides that in applying the rules governing the review of agency action, "due account shall be taken of the rule of prejudicial error." That statute requires courts to apply conventional principles of harmless error when reviewing agency action. *See Kolek v. Engen*, 869 F.2d 1281, 1286 (9th Cir. 1989); *Braniff Airways, Inc. v. CAB*, 379 F.2d 453, 465–66 (D.C.Cir.1967); *Kerner v. Celebrezze*, 340 F.2d 736, 740 (2d Cir.), *cert. denied*, 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99 (1965). As the Supreme Court explained in *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978), adminis-

trative action, like court decisions, should be set aside "only for substantial procedural or substantive reasons." *See Sea–Land Serv., Inc. v. United States*, 735 F.Supp. 1059, 1063 (Court Int'l. Trade 1990) (it is "well settled that courts will not set aside agency action for procedural errors unless the errors 'were prejudicial to the party seeking to have the action declared invalid' "), *aff'd and adopted*, 923 F.2d 838 (Fed.Cir.1991).

### 1

The first question presented by the harmless error inquiry is whether the error at issue in this case is of the sort that is amenable to harmless error analysis. Intercargo argues that it is not, inasmuch as the statute and the regulation dictate that the consequence of a defect in the extension notice is that the extension is not obtained. In essence, Intercargo's argument is that a notification reciting a statutory reason for the extension is a condition precedent to an extension of the one-year liquidation period, and that if that condition is not met, the extension never takes effect.

■ At the outset, we note that neither the statute nor the regulation dictates that the necessary consequence of a defect in the extension notice is to render the extension void. The statute requires Customs to inform the importer of the extension in the form and manner dictated by regulation, and the pertinent regulation provides that "if the district director extends the time for liquidation," he "promptly shall notify the importer and surety" of the fact of and reason for the extension. Neither speaks to the consequence of a defect in the notice.

■ With respect to Intercargo's contention that strict compliance with the statute and regulation is required because it is the notice that effects the extension, the courts have rejected the same argument in the analogous context of notices of appeal. Rule 3 of the Federal Rules of Appellate Procedure directs that a notice of appeal must contain particular matters. Nonetheless, while it is the filing of the notice of appeal that confers jurisdiction on the appellate court (just as it is the service of the notice of extension that

extends the liquidation period under the Customs laws), strict adherence to the requirements of Rule 3 is not a prerequisite to a valid appeal, as long as the litigant's action is "the functional equivalent of what the rule requires." *Smith v. Barry*, 502 U.S. 244, 248, 112 S.Ct. 678, 681–82, 116 L.Ed.2d 678 (1992); *see also Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315–16, 108 S.Ct. 2405, 2407–08, 101 L.Ed.2d 285 (1988) ("imperfect but substantial compliance" with technical requirements is sufficient). When the defect in the notice of appeal "did not mislead or prejudice" the appellee, and when the appellant's intention to appeal the order in question "was manifest," the Supreme Court has held that the "inept[ness]" of the notice should not defeat the appellant's right to appeal. *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities."). As a leading commentator has observed, summarizing a vast body of decisional law on the subject, "Defects in the wording of the notice of appeal are generally overlooked if the true intentions of the appellant can fairly be ascertained, if the courts have not been misled, and if the other parties have suffered no prejudice." 16 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Eugene Gressman, *Federal Practice & Procedure* § 3949, at 469 (1995 Supp.). As in the case of defects in notices of appeal, we conclude that the "rule of prejudicial error" applies to the defect at issue in this case.

Moreover, Intercargo's "strict compliance" argument sweeps too broadly. The regulation governing liquidation extensions provides, for example, that the district director shall notify the surety of an extension "on Customs Form 4333–A." 19 C.F.R. § 159.12(b). We assume Intercargo would not argue that the extension would be invalid if notice were given on a Customs form having a different number, and if such an argument were made we would have no difficulty rejecting it. We think the same result would follow if the regulation required that the notice be sent by registered mail, but in a particular instance it was sent by certified mail instead. Therefore, it is not the case, as Intercargo contends, that any extension notice that does not strictly conform to the "form and manner" prescribed in the regulation is ineffective to extend the liquidation period. Some deviations from the terms that are, or could be, included in the regulation would plainly be insufficient to render the extension ineffective. That is because not all deviations from the requirements of the statute or regulation would affect the interests that the statute and regulation are designed to protect, and because of the general principle that public rights should not be prejudiced because of immaterial errors on the part of public servants.

On this point, the Supreme Court's opinion in *Brock v. Pierce County*, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), is instructive. The Court in that case held that an agency's failure to satisfy a statutory timing requirement did not deprive the agency of its authority to act. The Court explained that it "would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." *Id.* at 260, 106 S.Ct. at 1839.

Subsequently, in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), the Supreme Court considered the effect of various statutory requirements governing the timing of forfeiture actions brought by Customs officers. The Court declined the invitation to hold that a violation of those timing requirements compelled it to dismiss the underlying forfeiture action. As the Court explained,

> We have held that if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.... "[There] is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent."

114 S.Ct. at 506 (citations omitted).

This court recently applied the Supreme Court's analysis from *Pierce County* and

*James Daniel Good* in a manner that provides useful guidance here. In *Kemira Fibres Oy v. United States*, 61 F.3d 866 (Fed. Cir.1995), the Department of Commerce failed to publish a notice of its intention to revoke a particular finding that had been made under the antidumping laws. Commerce's error violated its own regulations, and the question presented in the case was whether Commerce's failure to comply with the regulatory notice requirement voided the agency's subsequent administrative action. The court held that the administrative default by Commerce did not compel the court to revoke the antidumping finding. As the court explained, the plaintiff "should not become immune from the antidumping laws because Commerce missed the deadline. The national interest in the regulation of importation should not fall victim to an oversight by Commerce." *Id.* at 873.

The same principle applies here. The public interest in the administration of the importation laws should not "fall victim" to the failure by the Customs Service to use the requisite language in its extension notices, if the oversight has not had any prejudicial impact on the plaintiff.

2

■ That brings us to the second question arising under the harmless error analysis in this case: whether the defect in the extension notices was prejudicial to Intercargo. On this point, we think it clear that Intercargo suffered no prejudice.

Intercargo was informed that Customs was extending the liquidation period by one year. The purpose of the notice—to increase certainty in the customs process by apprising the importer and its surety of the precise period within which final action would be taken on the liquidation—was therefore satisfied. *See* S.Rep. No. 778, 95th Cong., 2d Sess. 32 (1978). Moreover, if Intercargo believed that Customs did not have a valid statutory reason for the extensions, it was open to Intercargo to seek to have the extensions invalidated on that ground. *See St. Paul,* 6 F.3d at 768–70. The omission of the requisite language from the extension notices had no effect on Intercargo's right to challenge the extensions on the ground that Customs did not in fact need additional information from Genauer in order to complete the liquidation. We are thus unable to discern any prejudice Intercargo may have suffered as a result of the defect in the extension notices that would justify forfeiture of the public's rights against the importer or its surety.

■ Intercargo does not make a serious effort to demonstrate prejudice of the pertinent kind. It asserts in passing that the prejudice it faces is that it may be forced, at the end of this litigation, to pay additional duties. As Intercargo puts it, "the prejudice flowing from this circumstance is the ultimate prejudice—the wrongful imposition of customs duty." But that is not what is meant by prejudice as used in this context. A party is not "prejudiced" by a technical defect simply because that party will lose its case if the defect is disregarded. Prejudice, as used in this setting, means injury to an interest that the statute, regulation, or rule in question was designed to protect. *See, e.g., Hernandez–Luis v. INS,* 869 F.2d 496, 498 (9th Cir.1989); *State of Texas v. Lyng,* 868 F.2d 795, 799–800 (5th Cir.1989); *United States v. Cerda–Pena,* 799 F.2d 1374, 1377 (9th Cir.1986); *Aero Mayflower Transit, Inc. v. ICC,* 711 F.2d 224, 232 (D.C.Cir.1983); *see generally Diaz v. Department of the Air Force,* 63 F.3d 1107, 1109 (Fed.Cir.1995).

Intercargo was advised of the extensions, and it was not deprived of its opportunity to challenge the extensions in court on the ground that they were not obtained for a statutorily valid reason. There is therefore no apparent prejudice to Intercargo of the type that would be required to justify terminating the government's right to assess import duties that may properly be due. For that reason, the Court of International Trade should not have held that Intercargo is entitled to relief simply because of the defect in the language of the extension notices.

III

In addition to appealing from the decision that the extensions were invalid because of the defect in the extension notices, the gov-

ernment argues that, in the proceedings before the Court of International Trade, Intercargo waived its right to contest whether the extensions were in fact obtained for a valid reason. The question whether Intercargo waived that claim is an issue that is properly left for the Court of International Trade to determine on remand; we do not reach it. If the Court of International Trade concludes that Intercargo has not waived that issue and Intercargo continues to press it, the court should address the merits of that issue on remand. We hold only that the court's summary judgment order in Intercargo's favor, based solely on the defect in the extension notices, must be overturned.

*REVERSED AND REMANDED.*

RADER, Circuit Judge, dissenting.

This court's decision in *St. Paul Fire & Marine Ins. Co. v. United States,* 6 F.3d 763 (Fed.Cir.1993), governs this dispute over whether the United States Customs Service (Customs) obtained a valid extension of time for liquidation of Intercargo's entries.

In *St. Paul,* this court held that section 1504 gives Customs one year to liquidate entries unless "properly noticed extensions" were granted "for statutory reasons." *Id.* at 770. This court stated that Customs must "notif[y] the importer of the extension and articulate[ ] one of three statutory reasons for the extension." *Id.* at 767. In this case, as this court notes, Customs did not give proper notice.

Customs' notices to Intercargo did not give a statutory reason for the extension. The statutory reason that Customs intended to invoke was that "information needed for the appraisement or classification of the merchandise is not available to the appropriate customs officer." 19 U.S.C. § 1504(b)(1)(1988). Customs, however, did not mention the need for information in its notices. Thus, these notices did not satisfy the requirement of the regulation. *St. Paul,* 6 F.3d at 767.

This court, however, treats Customs' defective notices as harmless error. This court inaccurately analogizes Customs' defective notices to procedural errors in notices of appeal. In a defective notice of appeal, the opposing party is not prejudiced by the defect. Any procedural defect can be easily cured without harm to the opposing party. In this case, however, Customs' defective notices have prejudiced Intercargo. Intercargo was prejudiced by the delays that section 1504 was enacted to correct.

Section 1504 was passed, in part, to "increase certainty in the process for importers, surety companies and other third parties with a potential liability relating to a customs transaction." S.Rep. No. 778, 95th Cong., 2d Sess. 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2243. Under the prior law, importers learned years after goods had been imported and sold that additional duties were due, or an excess of duties had been paid pending liquidation. *Id.* The 1978 enactment changed the law to address these lengthy and prejudicial delays to importers.

Thus, the Customs' extension notices were improper because they did not give a statutory reason for the extension. These notices did not satisfy the requirement of the regulation as interpreted in *St. Paul.* I would thus affirm the Court of International Trade's holding that the Customs' extension notices were defective.