## In re Appeals of Shantee Point, Inc.

[811 A.2d 1243]

No. 00-474

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed October 4, 2002

*Lisa B. Shelkrot* and *Liam L. Murphy* of *Langrock Sperry & Wool, LLP*, Burlington, for Appellant.

*Brian P. Hehir*, Burlington, for Cross-Appellant.

*David A. Barra* of *Hill, Unsworth & Barra, PLC*, Essex Junction, for Appellee.

**Dooley, J.** This case centers on a road, known as Shantee Point Road, located on a peninsula on Lake Champlain in the Town of St. Albans. The road was relocated in part by appellant, Shantee Point Estates, Inc. (SPE). The town zoning board, affirmed by the environmental court, ruled that the relocation required a subdivision permit. SPE appeals that decision, arguing that it was based on an invalid subdivision ordinance, was erroneous even if the ordinance were valid, and resulted from an improper intervention by appellee, Stephen Dana (Dana). Dana also sued in superior court, and that court, with the environmental judge sitting by designation, ruled that SPE had the power to relocate the road. Dana appeals from that decision, arguing that SPE could not relocate the road without his consent and that the relocated road was not of the same width and quality as the prior one. SPE responds that Dana failed to properly and timely appeal the superior court decision. We conclude that we have jurisdiction over the superior court appeal and affirm it and the decision of the environmental court.

The Shantee Point peninsula juts out into Lake Champlain in a southerly direction. Access has been provided by a dirt road along the west edge of the peninsula between the lake and a series of summer camps and permanent homes. Up until 1965, the developed land was owned by one person who rented lots, some forty-three in all, upon which the camps and homes were constructed. In that year, the owner's daughters inherited the property as tenants in common. Each sold her interest so that ownership of the land ended up with the litigants in this case as tenants in common.

Dana brought an action to partition the property in 1989, and the superior court did so in 1990 pursuant to a commissioners' report. Each party received some of the land containing camp and house lots, but to equalize value the lots were not entirely contiguous. Thus, proceeding from the north down the peninsula, Dana received the land containing the first ten lots, but the next group went to SPE, and the lots to the south of these were again awarded to Dana. The distribution of the land meant that both parties, and their tenants, would regularly use the length of the access road.

Litigation between the parties developed when SPE decided to relocate the road section serving its contiguous lots away from the lake and behind the camps and homes. Dana chose not to do a similar relocation of the road serving his ten contiguous lots to the north. Thus, after SPE's road relocation, a vehicle coming onto the peninsula from the north would first proceed along the lake on the old road in

front of Dana's ten lots, then proceed to the east on the "connector" portion and then proceed south on the new road behind SPE's lots, until joining the old road again south of these lots.

SPE built the road relying on opinions of the zoning administrator that no site plan or subdivision permit was necessary for the construction, and the following language in the partition order:

> Nothing herein shall be interpreted to construed to [sic] prohibit the above identified access roadway as it crosses the [a]bove parcels partitioned to [SPE] from being relocated by [SPE] (subject to applicable laws and regulations, if any) as long as its width and quality is at least maintained.

Dana was unhappy with the road relocation and commenced an action in superior court to require relocation of the road to its former location. Various proceedings started in the town planning commission and zoning board of adjustment (ZBA) and continued on appeal in the environmental court. The environmental judge was assigned to preside over the related superior court case, and she heard it in conjunction with the environmental court cases, but did not consolidate them. The court issued a final decision and order on September 21, 2000. We have consolidated all of the matters on appeal.

In the superior court case, Dana claimed that Shantee Point Road was a public road and that SPE unlawfully interfered with his easement over the road by relocating part of it without his consent. He also claimed that SPE unlawfully built the connector portion of the road on his property. SPE filed a third-party complaint against the Town to resolve whether the road was public or private.

While the trial in superior court was going on, and a year after construction of the new road section, the zoning administrator informed SPE on June 15, 1998 that a site plan permit was required for the road. On July 8, the administrator issued a notice of violation to SPE for constructing the road without site plan approval. The ZBA upheld the administrator's decision, and SPE appealed that decision to the environmental court. On June 1, 1999, the environmental court affirmed with respect to the connector section, but deferred decision on the rest of the new road until the superior court determined whether the old road was private or public.

On May 27, 1999, the administrator issued SPE a notice of violation for constructing the new road without subdivision approval. He relied upon § 200(b) of the Town of Saint Albans Subdivision Regulations, which provides that land development for residential or recreational

purposes is subject to the subdivision regulations if it involves "[c]onstruction or extension of a road or driveway to serve more than two lots." The ZBA upheld this decision, and SPE appealed to the environmental court, arguing that (1) all the land it owned was one "lot" despite the home and camp leases and (2) § 200(b) was invalid because it created a permit requirement without an actual subdivision. On cross-motions for summary judgment, the environmental court agreed with the Town and held that the road required subdivision approval under § 200(b). It did not, however, address SPE's argument that § 200(b) is invalid. This decision is one of the two on appeal before us.

Thereafter, the parties continued to skirmish over the connector section. The superior court ruled that it had been constructed on Dana's property and required that it be moved. On appeal from the planning commission, the environmental court granted site plan approval to the connector section once it was moved. Because the superior court ruled that Shantee Point Road was not a public road, this ended the site plan permit litigation, and the site plan permit has not been appealed.

As noted above, the superior court first ruled that the connector section had to be moved and that Shantee Point Road was a private road. On September 21, 2000, the court ruled that pursuant to the partition order, SPE had the right unilaterally to relocate the road section without Dana's consent. The court also found that the new road section surpassed the old road section in width and quality, as required by the partition order. This is the second decision on appeal before us.

SPE has filed appeals in the environmental court and the superior court cases. SPE also claims that, on the same day, Dana filed an appeal of the environmental court cases, but failed to file an appeal of the superior court case. We are treating these appeals under one docket because these cases are obviously interrelated.

We begin with SPE's claim that the trial court erred by allowing Dana to intervene in the environmental court matters. The environmental court allowed intervention under V.R.C.P. 24(a)(2), made applicable to the environmental court by V.R.C.P. 76(a)(2),[1] which allows for intervention of a party in certain circumstances when the intervenor claims an interest in property which is the subject of the action and the intervenor's interests are not adequately represented by other parties. SPE's position is that the Town of Saint Albans

---

[1] The rule is applicable to zoning and planning appeals but not to environmental enforcement cases under chapter 201 of Title 10. See V.R.C.P. 76(a)(2).

adequately represented Dana's interests so it was error to allow Dana to intervene.

We do not reach SPE's argument because we find that Dana was entitled to intervention under V.R.C.P. 24(a)(1), which allows intervention "when a statute confers an unconditional right to intervene." 24 V.S.A. § 4471(a) provides a right to intervene "to every interested person appearing and having been heard at the hearing before the planning commission, board of adjustment, or the development review board." The term "interested person" is defined in 24 V.S.A. § 4464(b), including:

> (3) A person owning or occupying property in the immediate neighborhood of a property which is the subject of any decision or act taken under this chapter, who alleges that the decision or act, if confirmed, will not be in accord with the policies, purposes or terms of the plan or bylaw of that municipality.

24 V.S.A. § 4464(b)(3).

It is undisputed that Dana appeared and was heard before the ZBA. Nevertheless, the environmental court ruled that Dana could not intervene as of right under § 4471 because he was not an interested person. Apparently, the court ruled that Dana would be an interested person under § 4464(b)(3) only if he were contesting an adverse decision of the ZBA, and not when he is supporting the ZBA decision. SPE argues that this represents a policy judgment of the Legislature that a landowner should not have to litigate against both the municipality and the adjoining landowner at the same time.

Although we recognize that the plain meaning of the statute appears to support the environmental court's decision, we also recognize that we held in *Mohr v. Village of Manchester*, 161 Vt. 562, 562, 641 A.2d 89, 90 (1993), that an adjoining landowner was an interested person who had a statutory right to intervene in an appeal taken by the permit applicant. The difficulty with the environmental court's construction of the statute is that it means that the adjoining landowner is not even entitled to notice of the appeal to the environmental court, the situation that occurred in *Mohr*. Thus, we conclude that we should continue to follow the holding in *Mohr* and allow intervention as of right to persons described in 24 V.S.A. § 4464(b)(3) who make a timely motion to intervene. The court did not err in allowing Dana's intervention in this case.

We address first SPE's arguments about the subdivision ruling. SPE contends that the ZBA and environmental court had jurisdiction, if at all, only because of § 200(b) of the town subdivision regulations, and that ordinance is invalid as beyond the authority of the Town to adopt. That section provides that land development for residential or recreational purposes is subject to the subdivision regulations if it involves "[c]onstruction or extension of a road or driveway to serve more than two lots." SPE argues that the Town's authority to enact subdivision regulations must be based on the Vermont Planning and Development Act, 24 V.S.A. § 4301 et seq., see *In re Lowe*, 164 Vt. 167, 169, 666 A.2d 1178, 1179-80 (1995), and that Act allows subdivision regulation only if there is a division of land into two or more parcels. To analyze that argument, we look at the relevant sections of the Act.

The purpose of the Act is to regulate land development, defined as:

> [T]he division of a parcel into two or more parcels, the construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure, or of any mining, excavation or landfill, and any change in the use of any building or other structure, or land, or extension of use of land.

24 V.S.A. § 4303(3). The Act contains a specific authorization for subdivision regulations:

> (2) Subdivision Regulations. A municipality may authorize its planning commission or its development review board to approve, modify or disapprove all plats of land as prescribed below, and approve the development of such plats previously filed in the office of the clerk of such municipality if such plats are entirely or partially undeveloped, under the subdivision regulations of such municipality. Within the jurisdiction of such municipality, except as specifically limited herein, such municipality may adopt subdivision regulations setting forth the procedures, requirements and specifications for the submission, processing and design of plats.

*Id.* § 4401(b)(2). Separate sections define the content of subdivision regulations. For example, § 4413 provides, in part:

> (a) Any subdivision regulation shall contain:
> (1) Procedures and requirements for the submission and processing of plats.

   (2) Standards for the design and layout of streets, curbs, gutters, street lights, fire hydrants, shade trees, water, sewage and drainage facilities, public utilities and other necessary public improvements.

   (b) Such regulations may provide, however, that the planning commission or the development review board may waive or vary, subject to appropriate conditions, the provision of any or all improvements and requirements as in its judgment of the special circumstances of a particular plat or plats are not requisite in the interest of the public health, safety and general welfare, or which in its judgment are inappropriate because of inadequacy or lack of connecting facilities adjacent or in proximity to the subdivision.

*Id.* § 4413(a), (b).

   Although the Act contains no explicit definition of "subdivision," we held in *Lowe* that, consistent with the definition of land development, "subdivision" means the division of a parcel into two or more parcels. *Lowe*, 164 Vt. at 169, 666 A.2d at 1180; see also *In re Taft Corners Assocs.*, 171 Vt. 135, 137, 758 A.2d 804, 807 (2000) (same). The Act also contains no definition of "plat," a term used throughout the subdivision statutes. SPE argues that in this context "plat" means a map of a subdivision. From these definitions, it argues that subdivision regulation can occur only when there is a division of a parcel into two or more parcels. Since the Town's subdivision regulations require a subdivision permit based solely on the construction or extension of a road without the actual division of a parcel of land into two or more parcels, SPE argues that the regulations are invalid.

   The main weakness in SPE's argument is that it ignores the regulatory difficulties caused by subdivisions that preexist the adoption of subdivision regulation in any town. As we noted in *Taft Corners Associates*, "[a]s Vermont has gone from a rural state, with large tracts of land devoted to farming, forestry or like uses, to a more urbanized state, much of its land has been subdivided to accommodate residential, commercial and industrial development." 171 Vt. at 144, 758 A.2d at 811. Much of this subdivision occurred before regulation. See, e.g., *In re McCormick Mgmt. Co.*, 149 Vt. 585, 588-90, 547 A.2d 1319, 1321-23 (1988) (zoning ordinance adopted two years after subdivision).

   A major purpose of modern subdivision regulation is to locate roads and ensure they are adequate not only for land owners they immediately abut but also for others who may pass over them to other

destinations. See *Gardner v. City of Baltimore*, 969 F.2d 63, 67 (4th Cir. 1992) (subdivision regulation serves as "a mechanism to insure that streets [are] properly constructed and [are] sufficiently wide for anticipated traffic"); D. Mandelker, Land Use Law § 9.2 (1982). Thus, following the partition of the land by the superior court, Dana and others who might purchase land from Dana depend upon SPE to provide adequate and convenient access over its lands. The Town depends upon SPE to provide adequate access for fire or public safety protection. Although the road is currently owned privately, the Town is legitimately concerned that it may become a public road.

Thus, for three reasons we conclude that the ordinance provision requiring subdivision approval for construction of a road serving more than two lots is valid. First, the Act not only does not define "subdivision," but it also does not explicitly limit the circumstances under which a municipality can require a subdivision permit. The real limit on the Town's regulatory power is contained in the Act's definition of "land development," and the use of undeveloped land to site the new road is clearly "land development" under 24 V.S.A. § 4303(3).[2] We note that it is not uncommon for state statutes to fail to specify the reach of subdivision regulations, see *Del. Midland Corp. v. Village of Westhampton Beach*, 359 N.Y.S.2d 944, 946 (Sup. Ct. 1974) ("The absence of a 'subdivision' definition in planning and zoning legislation is not unique."), *aff'd*, 369 N.Y.S.2d 378 (App. Div. 1975), *aff'd*, 355 N.E.2d 302 (N.Y. 1976), and the lack of specificity leaves room for local variation. See *id.* (lack of a "subdivision" definition "reserv[es] to each locality the right to determine one 'who subdivides' or what constitutes a subdivision"); *Bd. of Supervisors v. Georgetown Land Co.*, 131 S.E.2d 290, 292-93 (Va. 1963) (legislative intent was to reserve to each locality the right to define subdivision controls); *City of Mequon v. Lake Estates Co.*, 190 N.W.2d 912, 916-17 (Wis. 1971) (municipality is given broad discretion in implementing subdivision control). While the local discretion is not unlimited, we conclude it is broad enough to validate the ordinance provision involved here.

Second, the issue is the siting of a road, a traditional central concern of subdivision regulation. See 24 V.S.A. § 4413(a)(2); see also *North Landers Corp. v. Planning Bd. of Falmouth*, 416 N.E.2d 934, 939-40

---

[2] SPE argues that relocation of a road is not land development because it doesn't involve change in the use of land. This argument is at variance with the plain meaning of the terminology of the statute. The use of the land under the new location of the road is changed, as is the use of land under the old location.

(Mass. 1981) (adequate access is integral and principal object of subdivision control). It makes less sense to regulate this form of land development through zoning regulations.

Third, the ordinance allows subdivision jurisdiction only if the newly constructed or extended road serves more than two lots. As a result there had to be subdivision of land either at the time of road construction or in the past. It would not be in the public interest to allow the landowner to make significant changes in a preexisting subdivision with no regulatory review. See *Lampton v. Pinaire*, 610 S.W.2d 915, 921-22 (Ky. Ct. App. 1980) (changing location of roadways results in new plat which should be reviewed under existing zoning regulations). For example, if town fire protection equipment requires a road of a certain width for access to a fire, the town should have the ability to ensure that any reconstructed road meets those standards.

Next, SPE argues that it was not required to obtain a subdivision permit to relocate the road because the road serves only two lots — SPE's and Dana's — and not the three lots that trigger subdivision regulation under § 200(b) of the ordinance. The issue reduces to whether the leased lots on which the camps and houses sit are "lots" for purposes of the section. SPE argues they are not because they are all owned by it. The environmental court held that the leased lots are separate lots.

We must uphold the environmental court's construction of a zoning ordinance "unless clearly erroneous, arbitrary or capricious." *In re Dunnett*, 172 Vt. 196, 200, 776 A.2d 406, 409-10 (2001). In reaching its decision, the court relied primarily on a definition of "lot" in the town zoning regulations that states, in part, that a lot is "a parcel of land occupied or to be occupied by only one principal structure." In its argument to this Court, the Town has relied upon a definition of "lot" in Act 250 that includes a leased lot. 10 V.S.A. § 6001(11); see also *Hunter Broad., Inc. v. City of Burlington*, 164 Vt. 391, 394, 670 A.2d 836, 838 (1995) (under Agency of Natural Resources environmental protection rules, "subdivision" for public health purposes includes dividing a parcel of land by lease). SPE responds with a number of reasons why we should reject the court's conclusion: (1) the Town amended the ordinances to define "lot" to include leased lots and "subdivision" to include division into leased lots; (2) the Town subdivision regulations did not before that define "subdivision" to include division into leased lots; (3) SPE did not construct a road, but merely relocated the current road; and (4) the subdivision regulations do not contemplate leased lots.

■Although SPE raises valid points, we do not find them sufficient to render the environmental court's construction of the ordinance clearly erroneous. The amendments to the ordinance can be interpreted as clarifications adopted in light of this litigation, rather than substantive changes. See *Warner-Lambert Co. v. F.T.C.*, 562 F.2d 749, 758 n.39 (D.C. Cir. 1977) (subsequent grant of congressional authority does not prove agency's prior lack of authority); *Municipality of Anchorage v. Sisters of Providence*, 628 P.2d 22, 28 (Alaska 1981) (dispute or ambiguity surrounding statute is a strong indication that subsequent amendment is a clarification only); see also *Caledonian-Record Publ'g Co. v. Walton*, 154 Vt. 15, 25, 573 A.2d 296, 302 (1990) (provisions can be added to statutes to exclude a possible ground of misinterpretation of its extent); *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 241, 204 A.2d 155, 158 (1964) ("Clarification is a legitimate objective of legislative action. If the circumstances clearly indicate clarification to be intended," we enforce that intent). The definition of "subdivision" includes division into lots for purposes of "conveyance or sale"; the term "conveyance" is not inconsistent with a lease. See Black's Law Dictionary 334, 335 (7th ed. 1999) ("conveyance" definition includes "transfer of an interest in real property from one living person to another"; "conveyancing" is defined as "[t]he act or business of drafting and preparing legal instruments, esp. those (such as deeds or leases) that transfer an interest in real property"). The act of relocating the road included discontinuing the existing road and constructing a new one. The remainder of SPE's argument goes to how subdivision regulation will be applied in this case, rather than to whether there is subdivision regulation at all.

We now turn to Dana's claims on appeal. We first encounter SPE's motion to dismiss Dana's appeal because the notice did not cover the superior court judgment. SPE has really made three arguments: (1) the notice was filed in the wrong court; (2) by its terms, it did not cover the superior court proceeding; and (3) it was untimely. The facts are that the environmental judge was assigned to hear the environmental court appeals and the independent proceeding brought by Dana in the Franklin Superior Court. She issued final decisions and judgments in cases in both courts on September 21, 2000. Both parties mailed notices of appeal on October 18, 2000. SPE mailed separate notices of appeal to the environmental court and the Franklin Superior Court. Dana sent only one notice of appeal, to the environmental court. All notices of appeal were received on October 19, 2000, and all were

received in the Vermont Supreme Court on October 25, 2000, after being sent on by the court in which the notice was filed.

The single notice of appeal filed by Dana was directed to the clerk of the environmental court. The caption of the notice includes both the proceedings in the environmental court and those in the superior court, but the body of the notice states that Dana "hereby appeals to the Vermont Supreme Court from the decision and order of the Vermont Environmental Court, dated September 21, 2000." The cover letter to the clerk says that a notice of appeal "in relation to the above captioned matters" is enclosed. The caption for this letter includes the superior court docket number.

After filing the above documents, the Supreme Court docket clerk informed the parties that Dana's appeal was received after SPE's appeal and was being considered a cross-appeal. On October 27, Dana's counsel transmitted a check for the cross-appeal to the Supreme Court and stated that since the Court was treating the appeals from the Franklin Superior Court and the environmental court as one case, "it seems unnecessary to file a cross-appeal in response to Shantee Point Estates' separate appeal from the Franklin Superior Court." Thereafter, SPE withdrew its appeal of the Franklin Superior Court decision and moved to dismiss Dana's purported cross-appeal of that decision.

The timely filing of a notice of appeal is jurisdictional. See V.R.A.P. 3(b)(1); Reporter's Notes, V.R.A.P. 3. Other failures to comply with the appellate rules in taking an appeal do not affect the validity of the appeal, but are grounds for "appropriate" action. V.R.A.P. 3(b)(1). Courts liberally construe the requirements of Rule 3. See *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (construing substantially similar F.R.A.P. 3). If a litigant's action is the functional equivalent of what the rule requires, we will find compliance. See *id.* at 316-17. If a litigant files in a timely fashion a document that specifically indicates an intent to appeal and gives sufficient notice of that intent, there is compliance with the requirement to file a notice of appeal. See *Smith v. Barry*, 502 U.S. 244, 248 (1992) (finding an informal brief to be the functional equivalent of a notice of appeal under F.R.A.P. 3). An error in compliance with V.R.A.P. will affect the validity of an appeal only if it is prejudicial to another party. See *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 395 (Fed. Cir. 1996) ("When the defect in the notice of appeal did not mislead or prejudice the appellee, and when the appellant's intention to appeal the order in

question was manifest '... the ineptness of the notice should not defeat the appellant's right to appeal." (internal quotations omitted)).

■ Because Dana was cross-appellant, he could "file and serve a notice of appeal within 14 days of the date on which the first notice of appeal was filed." V.R.A.P. 4. Although the appellant is required to file the notice of appeal with the court from which the appeal is taken, a notice of appeal filed in the Supreme Court is treated as filed in the correct court on the date received by the Supreme Court. *Id.* Under these rules, we hold that Dana sufficiently complied with Rules 3 and 4.

Within fourteen days after SPE first filed its notice of appeal, Dana had filed his ambiguous notice of appeal in the environmental court, the notice of appeal had been filed in the Supreme Court, and Dana's counsel had clarified the scope of the appeal by letter to the docket clerk. The clarifying letter combined with the earlier notice of appeal was the functional equivalent of a complying notice of appeal. Only a couple of weeks thereafter, SPE withdrew its appeal of the superior court decision, and the issue of the validity of Dana's cross-appeal of the superior court decision surfaced. We do not believe that SPE is seriously prejudiced by allowing the appeal.

On the merits of the cross-appeal, Dana argues that the superior court erred in two respects: (1) in holding that the partition order allowed SPE to unilaterally move the road without Dana's consent; and (2) in holding that the new road built by SPE was of the same width and quality of the old road. We start with the first issue.

Before Dana requested that the court partition the land, no easements existed because the land was held by tenants in common as one parcel. Presumably, the tenants in common privately maintained the road to their mutual satisfaction. In order to give access to the road to both parties after the land was partitioned, the partitioning court, pursuant to its broad equitable powers, granted each parcel an easement over that part of the gravel road that crossed the other parcel. See 4 Powell on Real Property § 34.12 (1999) (court authorized to create easement in partition proceedings); *In re Marta*, 672 A.2d 984, 986 (Del. 1996) (court had authority to grant easement in partition proceedings where master's report recommended it); *Allendorf v. Daily*, 129 N.E.2d 673, 679 (Ill. 1955) (commissioners and court had authority to grant easement "if necessary to provide a fair and impartial partition").

The possibility that SPE would want to relocate the road arose in the partition proceedings. As a result, the commissioners in the

partition proceedings placed in their Report and Findings the following language:

> Nothing herein shall be interpreted to construed to [sic] prohibit the above identified access roadway as it crosses the [a]bove parcels partitioned to Joseph Montcalm, Andre Dufault and Steve Gillis from being relocated by Joseph Montcalm, Andre Dufault and Steve Gillis (subject to applicable laws and regulations, if any) as long as its width and quality is at least maintained.

The partition court accepted the findings and conclusions of the commissioners and incorporated them by reference in its decision.

Dana correctly points out that the general rule is that the owners of both the dominant and servient estates must consent to relocate an easement. See *Sargent v. Gagne*, 121 Vt. 1, 12, 147 A.2d 892, 900 (1958) ("It is the general rule that a way, once located, cannot be changed thereafter without the mutual consent of the owners of the dominant and servient estates."); see also 80 A.L.R.2d 743, 748 (1961) (collecting cases). An exception to the general rule, however, is that the parties may agree to grant or reserve to either or both parties the power unilaterally to relocate the easement. See *Holden v. Pilini*, 124 Vt. 166, 170, 200 A.2d 272, 275 (1964) (deed gave defendants right to change location of right of way on their land); *Davis v. Bruk*, 411 A.2d 660, 664 (Me. 1980). A party may relocate an easement "where the document creating the easement ... contains an express or implied grant or reservation of power to relocate." *Davis*, 411 A.2d at 664. In this case, the document that created the easement is the partition court's order which adopted the commissioners' Report and Findings. Thus, the issue before us is whether that order allowed for the unilateral relocation of the road. Dana contends that it does not because the parenthetical phrase in the report — "(subject to applicable laws and regulations, if any)" — means that the right to relocate the easement across SPE's property is subject to the common-law rule that both parties must consent to relocate an easement. SPE responds that the trial court was correct in holding that the language in question refers only to land use law and regulations.

Since the commissioners' report functions as the deed in this case, we will treat this as a deed construction question. "Our first responsibility in a deed construction case is to determine whether the deed is ambiguous. This is a question of law." *Thomas v. Farrell*, 153 Vt. 12, 16, 568 A.2d 409, 411 (1989). "In reaching this decision, we may

look to the plain meaning of the language as well as to the object, nature and subject matter of the writing and the circumstances surrounding its making." *Id.* at 16, 568. A.2d at 411. We conclude that the language in dispute is clear and unambiguous with respect to the dispute before the Court.

We begin with the plain language of the report. Although its wording might be more artful,[3] and it contains an unimportant scrivener's error, the plain language of the provision grants SPE the power to relocate the roadway. Nothing in the language gives Dana the right to participate in, or veto, the decision to move that part of the roadway which lies on SPE's property.

Dana's claim, that the phrase "(subject to applicable laws and regulations, if any)" means that SPE would still need to obtain his consent to move the roadway, would render the sentence superfluous and the authorization unnecessary. See *Kipp v. Chips Estate*, 169 Vt. 102, 105, 732 A.2d 127, 129 (1999) (in examining a deed, we give effect to every part, construing it as a consistent and harmonious whole); cf. *Hydeville Co. v. Eagle R.R. & Slate Co.*, 44 Vt. 395, 401-02 (1872) (court must construe a written contract so as to effectuate every part of it). Since SPE and Dana are the only interested parties, the partition order did not have to contain a road relocation provision for the parties to jointly agree to move the road. Thus, it is more plausible that this parenthetical phrase means that the partition order cannot exempt the parties from local and state land use law. Rather than attempt to list all of the applicable permits and land use laws, the commissioners simply noted parenthetically that the parties must still comply with them. We agree with the trial court that the partition order is not ambiguous and that it grants the parties the right unilaterally to move the easement on their property as long as they comply with the terms of the authorization and with local permitting and land use requirements.

Second, Dana contends that the trial court erred by finding that the new road is of the same width and quality as the old gravel road. The partition order states that if the road is relocated, the replacement road must be of at least the same width and quality as the old road.

---

[3] Although the parties have not flagged the construction as a source of ambiguity, we note that the language does not create an authorization for moving the road, but instead says that nothing in the report prevents relocation. Since it is the common law that prevents relocation of the road without the consent of both tenants, and not the partition order, the language is misdirected. Despite the language, however, we think the intent is clear to allow the road to be relocated.

The court found that the new road complied with the partition order requirement based largely on the testimony of SPE's witness, who is a civil engineer. Pointing out that SPE's witness is the son of tenants of SPE and that other witnesses expressed concern about the quality of the new road, Dana argues that there is inadequate evidentiary support for the superior court's finding.

We will not disturb a trial court's factual findings unless, taking them in the light most favorable to the prevailing party, they are clearly erroneous. *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997). It is up to the trial court to determine the credibility of witnesses and to weigh the persuasive effect of evidence. See *In re 75,629 Shares of Common Stock*, 169 Vt. 82, 92, 725 A.2d 927, 935 (1999) ("It was within the [trial] court's discretion to determine the weight to be given any particular evidence."). Based on the evidence presented at trial, and according the trial court the required deference, we conclude that the trial court's decision to rely on the engineer's testimony in making its findings of fact was not clearly erroneous.

*The decisions of the environmental court and the Franklin Superior Court are affirmed.*