STATE OF VERMONT

ENVIRONMENTAL COURT

|                                           |   |                        |
|-------------------------------------------|---|------------------------|
| In re: E. Randolph Meadows Corporation    | } | Docket No. 146-7-07 Vtec |
| Planned Unit Development Subdivision       | } |                        |

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicant East Randolph Meadows Corporation (Applicant) appealed from one condition imposed in a decision of the Development Review Board of the Town of Randolph, approving its planned unit development subdivision.  Appellant-Applicant is represented by Robert A. Gensburg, Esq.; the Town is represented by Peter M. Nowlan.  Barnboard, LLC, an entity apparently related to Applicant which owns property involved in a boundary adjustment affecting this proposal, entered an appearance as an interested person through its agent Kenneth Balon, but did not file memoranda in connection with the pending motions.

Applicant moved for summary judgment on at least Questions 2 and 3 of the Statement of Questions: that is, whether the regulations require all service wiring to be installed underground if the subdivision road will remain private.  The following facts are undisputed unless otherwise noted.

Applicant East Randolph Meadows Corporation owns an 18.98-acre parcel of land located at 464 Route 14S in East Randolph.  After a boundary adjustment between property owned by Applicant and adjoining property owned by Barnboard, LLC, the project property will be 19.1 acres in area.  Applicant proposes to transfer the property to the architect who designed the PUD, for its further development.

The proposed PUD is designed to include twenty-four detached, moderate-income

1

single-family residences, each on its own approximately quarter-acre lot.  In addition, the PUD is proposed to include one commercial lot[1] ( 0.7-acre in size and with frontage on Route 14), another lot containing the water plant serving the development, and two open space parcels totaling about 9.25 acres in area.  The portion of the site other than the house lots, including the open space, the water system, and the PUD roadway and infrastructure, will be owned and maintained by an association of the homeowners.

Access to the PUD from Route 14 is proposed to be by a single curb cut onto an unpaved roadway no less than 20 feet in width.  In the interior of the PUD the roadway makes a T-shaped intersection, with one branch extending towards the south to a parking area suitable for vehicles to turn around at the water plant.  The other branch of the PUD road extends towards the north to a 60-foot-radius cul-de-sac turnaround.  The Owners' Association will own, maintain, repair, and replace the PUD road and the other common infrastructure on the site; Applicant does not propose that the PUD roadway will become a town road.  While the DRB has not made a formal decision pursuant to § 6.1 that the Town's acquisition of the proposed PUD road "is not in the public interest," it has made a finding that the proposed PUD road "will be owned and maintained by a common ownership association."

The proposal is subject to the Subdivision Regulations and to the Zoning Regulations as they relate to PUDs.  Although the regulations establish standards for waiving otherwise-applicable provisions of the zoning regulations, § 3.5.5 (Zoning Regulations), and of the subdivision regulations, §3.2[2] (Subdivision Regulations), no

---

[1]    Applicant's statement of facts states that there will be no commercial improvements, but the site plan shows this commercial lot as part of the PUD.  It is possible that this lot, which contains an existing barn, is the property that will be held by Barnboard, LLC.

[2]  This section appears to adopt by reference the standards for waiver found in former 24 V.S.A. § 4413(b), which is found in §4418(2)(A) of the present statute as amended

waiver appears to have been requested in the present case.

Section 6.1 of the Subdivision Regulations provides a preference or rebuttable presumption in favor of the public ownership of subdivision streets; it provides that:

> [a]ll improvements involving water, sewer, streets, etc., shall be the responsibility of the subdivider.  All proposed streets and facilities shall be public except when it is the decision of the [DRB] that public acquisition of specific proposed streets is not in the public interest.  In that event such proposed streets shall remain private and if there[3] [sic] are required for plat approval the subdivider shall sign a covenant with the Town of Randolph regarding said streets.  (Exhibit B of [the Subdivision] Regulations).  Furthermore, said covenant shall become part of every deed of transfer within the proposed subdivision.

Section 6.2 of the Subdivision Regulations, entitled "Street System," sets forth standards for construction of new subdivision roads.  The last sentence of § 6.2 provides specifically that "[w]henever the words street or road, water or sewer line are used in this paragraph, it [is] to be interpreted as meaning <u>public</u> street or road or water or sewer line." (Emphasis added).

The contested condition requiring that service wiring be installed underground was based on another sentence in § 6.2 stating that "[a]ll service wiring shall be underground, and shall be the responsibility of the subdivider."   This type of regulation "ensures that, especially if the town might be asked to take such roads over in the future, such roads would be constructed to adequate standards." <u>In re: Morris 7-Lot Subdivision (Appeal of Kelley)</u>, Docket No. 71-4-07 Vtec, slip op. at 6 (Vt. Envtl. Ct., Nov. 26, 2007); and see <u>In re Shantee Point, Inc.</u> 174 Vt. 248, 257 (2002).  Accordingly, § 6.1 of the Subdivision Regulations provides for the subdivider to sign a covenant not to later request the street

_____

in 2004.

[3]  It is not clear whether this is simply a typographic error and should have been "these," or if additional text is missing from this sentence.

to be taken over by the Town.

The recognized canons of statutory and ordinance construction apply to the interpretation of a zoning ordinance. In re: Gregoire, 170 Vt. 556, 559 (1999). The Court must give "effect to the whole and every part of the ordinance," In re Stowe Club Highlands, 164 Vt. 272, 279–80 (1995) (citation omitted), so that no language is surplusage, In re Dunnett, 172 Vt. 196, 199 (2001), and so that the construction does not produce an absurd result. See, e.g., Willard v. Parsons Hill Partnership, 2005 VT 69, ¶21, 178 Vt. 300, 308 (2005).

Reading the Subdivision Regulations as a whole, and giving effect to all sections, in particular the final sentence of § 6.2, service wiring is only required to be installed underground along public streets and roads. While § 6.1 creates a presumption that subdivision roads will be public, it allows the DRB to determine that Town acquisition of Appellant's subdivision road is not in the public interest; similarly, §3.2 allows the DRB to waive that requirement. Although the DRB has made a finding that the road will remain private, it does not appear to have made the explicit determination that the Town's acquisition of it is not in the public interest. Nor has it been asked to consider or to rule on a waiver under §3.2 of the Subdivision Regulations.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant-Applicant's Motion for Summary Judgment is GRANTED that service wiring is only required to be underground along public streets and roads; the Town's Motion is therefore DENIED. However, especially as the Town of Randolph has adopted on-the-record procedures for its DRB, it is for the DRB in the first instance to determine whether under § 6.1 the Town's acquisition of Appellant's subdivision road is not in the public interest, or to consider any application for waiver that may be made under § 3.2.

The only provision of the DRB decision that was appealed is the condition

4

requiring the underground placement of service wiring. Accordingly, the decision remains in effect except that the condition requiring the service wiring to be underground is VACATED and REMANDED for any further proceedings as discussed in this decision. In particular, the DRB may consider under § 6.1 whether Town acquisition of Appellant's subdivision road is not in the public interest, and may consider whether Appellant's or its successor Owners' Association's covenant with the Town, acknowledging that the road[4] is to remain private, should be imposed as a condition. If any § 3.2 waiver application is made in the remanded proceedings with regard to the underground placement of service wiring, the DRB may address it as well.

This decision appears to dispose of all the issues in the Statement of Questions. Accordingly, a judgment order is hereby issued, to be effective on December 18, 2007; if Appellant believes that any issue remains under the heading of Question 1 of the Statement of Questions, please advise the Court so that it is received[5] by the Court in writing by 4 p.m. on December 17, 2007.

Done at Berlin, Vermont, this 10th day of December, 2007.

_____
Merideth Wright
Environmental Judge

---

[4] The model covenant found in Exhibit B to the Subdivision Regulations lumps together public roads, public water service, and public sewer service. In an appropriate case, the terms of §§ 6.1 and 3.2 appear to allow the DRB to require a covenant solely with respect any one of these public facilities.

[5] Permission is hereby given to fax this document, if necessary.